Filed 6/14/22  P. v. Owens CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>FREEMAN OWENS, III,<br><br>        Defendant and Appellant. | A160802<br><br>(San Mateo County<br>Super. Ct. No. 17SF008057A) |

Freeman Owens, III (appellant) appeals following his convictions, after a jury trial, of second degree murder and other charges.  Appellant's sole claim on appeal is the trial court erred in failing to sua sponte instruct the jury on the lesser included offense of heat of passion voluntary manslaughter.  We affirm.

## BACKGROUND

In July 2015, Alejandra L. was dating appellant, who lived in the same apartment complex she did.  She was also married and her husband was in jail.  She had not told her husband about her relationship with appellant.

The victim, Mark Jack, was dating Alejandra's sister, Monica L.  Jack and Alejandra's husband were very close friends.  Jack either knew or suspected Alejandra was dating appellant and was bothered by it because of

1

his friendship with Alejandra's husband. Monica testified there was underlying tension between Jack and appellant but they "were cordial with each other." Alejandra testified there were no issues between the two. She also testified she had slept with Jack before starting her relationship with appellant.

On the day of the shooting, Monica came over to Alejandra's apartment about 2:00 p.m. Alejandra smoked marijuana and Monica had a Xanax. Later, a few others joined them and they all sat outside drinking, except for Alejandra who did not drink. About 6:00 p.m., Jack arrived and began drinking with the group. Appellant was not there. At some point, Monica and Jack left to buy more alcohol and brought it back to the group. They were both drunk but not "falling over drunk."

Monica testified she first saw appellant that day around 9:20 p.m. Jack and appellant shook hands. At some point, Jack called Monica over to his car and said they were leaving. Alejandra was in the backseat, but Monica did not know what they had been talking about. When Monica approached the car, Alejandra asked Monica if they were "good" and Monica responded yes. Jack told them "if he says we're not good we're not good." Monica did not know what was going on. Alejandra said something like, "I've chosen you. I've always chosen you," and walked inside to her apartment. Jack began yelling at appellant, saying something like, "Boo, ask about me." Jack and appellant were standing about 20 feet apart. Appellant, who now had a gun in his hand, told Jack, " 'You're talking too much now,' " and then shot Jack multiple times. Monica went to Jack, and appellant pointed his gun at her and said something like, "I should finish this." Alejandra told him "No," and appellant left. Monica called 911 shortly before 10:00 p.m.

2

In a police interview a few hours after the shooting, Monica said Jack and Alejandra were "talking shit to each other and I don't think [appellant] could handle it."[1]  She said she did not know what happened or was said right before the shooting.

Alejandra testified she argued with Jack shortly before the shooting because he was yelling at Monica and treating her badly.  She also testified she and Jack were talking about a gun he was supposed to sell for her husband.  When Alejandra asked Monica if things were good between them, it was because earlier in the evening she had threatened to tell their father and brother about how Jack was treating Monica.  When the shots were fired, Alejandra was inside and did not see what happened.

In a recorded jail call with her husband the morning after the shooting, Alejandra said Jack was "[b]eing disrespectful" to Alejandra, was "near trying to" fight her, "wasn't innocent," and "shouldn't have come over here talking like that."[2]  She said at one point Jack and appellant "shook hands and it was done.  And then [Jack] started all over again."

A cousin of the sisters, who was also present the night of the shooting, testified she heard Jack yelling and cursing at Monica.  The cousin heard Jack tell Monica to get in the car and Monica said ok.  Minutes later, shots were fired.

An autopsy showed Jack had been shot eight or nine times.

---

[1] A video of the interview was played for the jury and a transcript was provided.

[2] The recorded call was played for the jury and a transcript was provided.

The jury found appellant guilty of second degree murder (Pen. Code, § 187),[3] found true an allegation that he personally discharged a firearm (§ 12022.53, subd. (d)), and found him guilty of possessing a firearm as a felon (§ 29800, subd. (a)(1)).[4]

## DISCUSSION

Appellant's sole claim on appeal is the trial court erred in failing to instruct the jury, sua sponte, on the lesser included offense of heat of passion voluntary manslaughter. We reject the claim.

" 'In criminal cases, even absent a request, the trial court must instruct on general principles of law relevant to the issues raised by the evidence. [Citation.] This obligation includes giving instructions on lesser included offenses when the evidence raises a question whether all the elements of the charged offense were present, but not when there is no evidence the offense was less than that charged.' " (*People v. Moye* (2009) 47 Cal.4th 537, 548 (*Moye*).) " '[T]he existence of "*any* evidence, no matter how weak" will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is "substantial enough to merit consideration" by the jury. [Citations.] "Substantial evidence" in this context is " 'evidence from which a jury composed of reasonable [persons] could . . . conclude[]' " that the lesser offense, but not the greater, was committed.' " (*Id.* at p. 553.)

" ' "Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) A defendant who commits an intentional

---

[3] All undesignated section references are to the Penal Code.

[4] The jury also found appellant guilty of assault with a firearm in a separate incident, charged in the same information, that is not at issue in this appeal.

4

and unlawful killing but who lacks malice is guilty of . . . voluntary manslaughter. (§ 192.)" ' " (*Moye, supra,* 47 Cal.4th at p. 549.) "When a person attempts to kill while acting upon a sudden quarrel or in the heat of passion—even if exercising a sufficient 'measure of thought . . . to form . . . an intent to kill'—[that person] acts with 'a mental state that precludes the formation of malice.' [Citation.] A person acts upon a sudden quarrel or in the heat of passion if [that person's] reason ' " 'was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation or reflection, and from such passion rather than from judgment.' " ' " (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1136–1137 (*Millbrook*).)

"A heat of passion theory of manslaughter has both an objective and a subjective component. [Citations.] [¶] ' "To satisfy the objective or 'reasonable person' element of this form of voluntary manslaughter, the accused's heat of passion must be due to 'sufficient provocation.' " [Citation.]' [Citation.] '. . . The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim. [Citations.] The provocative conduct by the victim may be physical or verbal, but the conduct must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. [Citations.]' [Citation.] [¶] To satisfy the subjective element of this form of voluntary manslaughter, the accused must be shown to have killed while under 'the actual influence of a strong passion' induced by such provocation. [Citation.] 'Heat of passion arises when "at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average

5

disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment." ' " (*Moye, supra,* 47 Cal.4th at pp. 549–550.)

Appellant argues *Millbrook* is a case "much like" this one.  In *Millbrook,* the victim and the defendant, who did not know each other, were at a party.  (*Millbrook, supra,* 222 Cal.App.4th 1122 at pp. 1128, 1131.)  The victim argued with the defendant's girlfriend and the defendant confronted the victim about the argument.  (*Id.* at pp. 1129, 1131.)  The argument escalated and the defendant shot the victim.  (*Id.* at pp. 1131, 1134.)  The Court of Appeal found sufficient evidence of provocation where "two witnesses testified that [the victim] said something insulting about or to [the defendant's girlfriend] immediately before being shot: 'You better check your bitch,' according to [one witness], and 'Shut up, I'm going to get somebody to beat your bitch-ass up,' according to [another]," and there was "testimony that [the victim] had his hands clenched and 'lunged' at [the defendant] immediately before being shot; and testimony that [the victim's friend] intervened right before the shooting with his hand on [the victim] to prevent an escalation of the argument."  (*Id.* at p. 1141.)

In contrast to *Millbrook,* there was no evidence of provocation here. The mere fact that there was or may have been ongoing tension between Jack and appellant on various issues is not sufficient absent evidence that Jack's provocative conduct prompted the shooting.  Alejandra did not witness the shooting and testified she did not know what happened right before the shooting.  Although she told her husband the following day that Jack was "[b]eing disrespectful" to her and "shouldn't have come over here talking like that," she provided no specifics about what Jack said or did right before the shooting for purposes of provocation.  The sisters' cousin did not testify to any

6

interaction between Jack and appellant right before the shooting. Monica testified only that Jack was yelling at appellant from 20 feet away and said something like, "Boo, ask about me." Appellant does not contend this statement constitutes evidence of provocation, and the bare fact that Jack was yelling at appellant is not sufficient. (See *People v. Manriquez* (2005) 37 Cal.4th 547, 586 (*Manriquez*) [the only evidence of provocative conduct by the victim—that he "called defendant a 'mother fucker' and that he also taunted defendant, repeatedly asserting that if defendant had a weapon, he should take it out and use it"—was "plainly . . . insufficient to cause an average person to become so inflamed as to lose reason and judgment"].)

There was also no evidence to satisfy the subjective element. The only evidence of appellant's state of mind was Monica's testimony that, just before the shooting, appellant told Jack, "you're talking too much now." The record "contained no indication that defendant's actions reflected any sign of heat of passion at the time he commenced firing his handgun at the victim. There was no showing that defendant exhibited anger, fury, or rage; thus, there was no evidence that defendant 'actually, subjectively, kill[ed] under the heat of passion.' " (*Manriquez, supra,* 37 Cal.4th at p. 585.)

Accordingly, the trial court did not err in failing to instruct the jury on heat of passion voluntary manslaughter.

DISPOSITION

The judgment is affirmed.

7

                                              _____
                                              SIMONS, J.

We concur.


_____
JACKSON, P. J.


_____
NEEDHAM, J. *


(A160802)

<hr>

        * Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.